1

2

3

4

5        UNITED STATES DISTRICT COURT

6        EASTERN DISTRICT OF WASHINGTON

7   DEBBIE TAKATA,

                                          NO:  CV-11-5068-RMP
8                        Plaintiff,

        v.
9

    HARTFORD COMPREHENSIVE            ORDER GRANTING DEFENDANTS'
10  EMPLOYEE BENEFIT SERVICE          MOTION FOR SUMMARY
    COMPANY, a foreign corporation;   JUDGMENT
11  BATTELLE MEMORIAL
    INSTITUTE, a foreign corporation;
12  and BATTELLE MEMORIAL
    INSTITUTE EMPLOYEES' LONG-
13  TERM DISABILITY BENEFITS
    PLAN,
14
                         Defendants.
15

16        This matter comes before the Court on Defendants' motion for summary

17  judgment, ECF No. 46.  The Court has reviewed the filings relating to the motion,

18  including Defendants' accompanying memorandum, ECF No. 48, supporting

19  declarations, ECF No. 50-51, and Statement of Specific Facts, ECF No. 49.  Oral

20  argument was held on September 5, 2012.  ECF No. 81.  Plaintiff argued against

ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY
JUDGMENT ~ 1

the motion, but did not properly submit responsive briefing or additional support for her position.

### Facts & Procedural History

Plaintiff Debbie Takata worked for Defendant Battelle Memorial Institute ("Battelle") as a Systems Analyst from January 1983 to June 7, 1991. ECF No. 1, at 3. Her duties in that position included attending meetings, designing operational systems, working with computers and telephones and interacting with other people. ECF No. 51, at 498.

By virtue of her employment with Battelle, Plaintiff became a participant under the Battelle Memorial Institute Employees' Long-Term Disability Benefits Plan ("the Plan"). ECF No. 51, at 560. Battelle was the plan administrator and self-funded the plan. ECF No. 51, at 560, 584; ECF No. 50, at 11.

Effective October 1, 2004, Battelle designated Defendant Hartford Comprehensive Employee Benefit Service Company ("Hartford") as the Plan's claims administrator subject to an administrative services agreement ("ASA"). ECF No. 51, at 583-98. Pursuant to the ASA, Hartford agreed to interpret all relevant provisions of the Plan relating to eligibility for benefits and handle all appeals related to claim denials or terminations made by Hartford, among other duties. ECF No. 51, at 597. The ASA and the Plan granted Hartford discretionary

authority to determine eligibility for benefits and to interpret the terms of the Plan. ECF No. 50, at 11; ECF No. 51, at 597.

The Plan defines Total Disability as follows:

For eligibility for the first 24 months of benefits under the Plan, Total Disability means your inability, due to sickness or accidental bodily injury, to perform important duties pertaining to your occupation required to meet the business needs of Battelle, as determined by the Claims Administrator.

After 24 months of benefits, Total Disability means your complete inability to engage in any and every gainful occupation for which you are reasonably fitted by education, training or experience, as determined by the Claims Administrator.

ECF No. 50, at 8.

Plaintiff ceased working on June 7, 1991, and filed a claim for disability benefits under the Plan. ECF No. 1, at 3-4. Plaintiff claimed that she was unable to perform her duties due to fibromyalgia and chronic fatigue syndrome, among other conditions. ECF No. 1, at 4. Plaintiff alleged such limitations as overwhelming fatigue, pain, stiffness, mental fogginess, blurred vision, and an ability to complete basic tasks without assistance. ECF No. 51, at 363-67.

Plaintiff began receiving disability benefits under the Plan on June 8, 1991. After taking over as claims administrator, Hartford ordered surveillance on Plaintiff's activities in January and February of 2007. The videotaped surveillance took place over four days. ECF No. 51, at 245-53, 355-59.

ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT ~ 3

On the basis of the video surveillance, medical records, and other information in Plaintiff's claim file, as discussed further in this Order, Hartford terminated Plaintiff's eligibility under the Plan by letter dated August 20, 2007. ECF No. 51, at 98-102.  Plaintiff appealed Hartford's determination on January 28, 2008, stating that new medical documentation supported her disability.  ECF No. 51, at 73-75.

Hartford referred the new evidence and the rest of the claim file to Dr. Mark R. Burns, Board Certified in Internal Medicine and Rheumatology, for an independent medical examination ("IME").  ECF No. 51, at 47-50.  Dr. Burns found no "quantifiable" proof supporting the claimed extent of Plaintiff's restrictions and limitations, and determined that Plaintiff was capable of returning to full-time work in a sedentary or light-duty capacity.  ECF No. 51, at 49.

On April 25, 2008, Hartford upheld its decision to terminate Plaintiff's benefits under the Plan.  Hartford explained that it had reviewed the entire file, including the new information submitted by Plaintiff and Dr. Burns' IME, and determined that the evidence failed to support functional restrictions and limitations that would prevent Plaintiff from work in any and every occupation despite her medical diagnoses.  ECF No. 51, at 38-41.

Plaintiff filed suit in this Court on August 22, 2011, alleging that Defendants violated the Employee Retirement Income Security Act (ERISA) by terminating

ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT ~ 4

benefits to which she was entitled.  Plaintiff further claimed a right to recover penalties and attorney's fees under the Act.

Following the initiation of this action, Plaintiff filed a motion to compel discovery from Defendants on January 10, 2012.  ECF No. 19.  Defendants filed their summary judgment motion on February 22, 2012, while Plaintiff's motion to compel was pending before the Court.  ECF No. 46.  On March 9, 2012, Plaintiff moved for an extension of time to file a response to Defendants' motion for summary judgment.  ECF No. 55.  Plaintiff's counsel explained that the discovery Plaintiff sought pursuant to the motion to compel would be relevant to her response to Defendants' summary judgment motion.  ECF No. 55-1.  The Court granted Plaintiff's motion for an extension of time by Order dated March 14, 2012.  The Order provided that Plaintiff would have two weeks from the date the Court resolved the pending motion to compel to file her response to Defendants' motion for summary judgment.  ECF No. 60.

The Court entered an Order granting in part Plaintiff's motion to compel on March 28, 2012.  ECF No. 61.  Accordingly, Plaintiff had until April 11, 2012, to file a response to Defendants' motion for summary judgment.  To accommodate Defendants' response time, the Court set oral argument on Defendants' motion for September 5, 2012.  ECF No. 74.

ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY
JUDGMENT ~ 5

Plaintiff did not file a response to Defendant's motion for summary judgment or request an additional extension of time. Then, on August 31, 2012, more than four months after the deadline for filing a response and only two business days prior to oral argument, Plaintiff filed a motion to continue oral argument on Defendants' motion for summary judgment. ECF No. 76. Plaintiff further requested that the Court accept a late-filed response to Defendants' motion for summary judgment. ECF No. 76. Without waiting for the Court to rule on her motion, Plaintiff filed her Response to Defendant's Statement of Specific Facts and her Contrary Statement of Facts on Labor Day, September 3, 2012, just two days before the continued date for oral argument on Defendants' motion. ECF Nos. 77-78. On September 4, 2012, the Court issued an Order denying Plaintiff's request for continuance of the oral argument and striking Plaintiff's response filings from the record as untimely and not supported by good cause. ECF No. 80.[1]

### Analysis

Defendants brought their motion under Rule 52 and Rule 56 of the Federal Rules of Civil Procedure. However, Rule 52 applies only when the court has issued factual findings following a trial on the merits. *See* Fed. R. Civ. P. 52(a); *Nolan v.*

---

[1] The Court notes that Plaintiff's filings did not contain any additional information that was not already in the record. Moreover, Plaintiff previously briefed many of the issues pertaining to Defendants' summary judgment motion during the litigation of her motion to compel discovery.

ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT ~ 6

*Heald College*, 551 F.3d 1148, 1154 (9th Cir. 2009). This action has not yet proceeded to trial nor has the Court issued findings of fact. The Court will therefore evaluate Defendants' motion as a motion for summary judgment under Federal Rule of Civil Procedure 56.

**A. Standard of Review**

Summary judgment is appropriate when there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Federal Rule of Civil Procedure 56(a). A "material" fact is one that is relevant to an element of a claim or defense, and whose existence might affect the outcome of the suit. *T.W. Elec. Serv. v. Pacific Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir 1987). Thus, the materiality of a fact is determined by the substantive law governing the claim or defense. *Id.* The party asserting the existence of a material fact must show "sufficient evidence supporting the claimed factual dispute . . . to require a jury or judge to resolve the parties' differing versions of the truth at trial." *Id.* (quoting *First Nat'l Bank v. Cities Serv. Co.*, 391 U.S. 253, 288-89 (1968)). The mere existence of a scintilla of evidence is insufficient. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).

The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the moving party meets this burden, the burden then shifts to the non-

ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT ~ 7

1    moving party to "set out specific facts showing a genuine issue for trial." *Id.* at

2    324 (internal quotations omitted).  The nonmoving party "may not rely on denials

3    in the pleadings, but must produce specific evidence, through affidavits or

4    admissible discovery material, to show that the dispute exists." *Bhan v. NME*

5    *Hosps., Inc.*, 929 F.2d 1404, 1409 (9th Cir. 1991).  In deciding a motion for

6    summary judgment, the court must construe the evidence and all reasonable

7    inferences in the light most favorable to the nonmoving party.  *T.W. Elec. Serv.*,

8    809 F.2d at 631-32.

9         However, when the decision to grant or deny ERISA benefits is reviewed for

10    an abuse of discretion, "a motion for summary judgment is merely the conduit to

11    bring the legal question before the district court and the usual tests of summary

12    judgment . . . do not apply." *Bendixen v. Standard Ins. Co.*, 185 F.3d 939, 942 (9th

13    Cir. 1999), *overruled on other grounds by Abatie v. Alta Health & Life Ins. Co.*,

14    458 F.3d 955, 965 (9th Cir. 2006) (en banc).  A denial of benefits under an ERISA

15    plan is reviewed under a de novo standard "unless the benefit plan grants the

16    administrator or fiduciary discretionary authority to determine eligibility for

17    benefits or to construe the terms of the plan." *Burke v. Pitney Bowes Inc. Long-*

18    *Term Disability Plan*, 544 F.3d 1016, 1023 (9th Cir. 2008) (quoting *Firestone Tire*

19    *& Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989)).  If the plan grants such

20    discretion to the administrator, then the administrator's determination is reviewed

for an abuse of discretion.  *Saffon v. Wells Fargo & Co. Long Term Disability Plan*, 522 F.3d 863, 866 (9th Cir. 2008).

Under the general abuse of discretion standard, a plan administrator's decision on benefits can be upheld if it is "grounded on *any* reasonable basis." *Montour v. Hartford Life & Accident Ins. Co.*, 588 F.3d 623, 629-630 (9th Cir. 2009).

The court applies a modified abuse of discretion standard when the plan administrator operates under a conflict of interest, such as when the same entity that funds an ERISA benefits plan also evaluates claims.  *Id.* at 630.  If such a conflict of interest exists, then the court must consider numerous case-specific factors in applying the abuse of discretion standard.  *Id.* (citing *Metropolitan Life Ins. Co. v. Glenn*, 554 U.S. 105, 118 (2008)).  The court must consider the conflict of interest itself along with such factors as the quality and quantity of the medical evidence, whether the plan administrator subjected the claimant to an in-person medical evaluation, whether the administrator provided its independent experts with all of the relevant evidence, and whether the administrator considered a contrary disability determination by the Social Security Administration.  *Id.*

Defendants argue that the general abuse of discretion standard should apply on summary judgment.  Defendants contend that Battelle's long-term disability plan gave it discretion and that this discretion was delegated in turn to Hartford as

ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT ~ 9

an independent claims fiduciary.  Defendants contend that Harford exercised this

discretion in making the final determination on Ms. Takata's eligibility for

benefits.  Plaintiff disagrees and instead contends that the Court should review her

claim de novo.  Plaintiff argues that Battelle is the entity that actually made the

determination on her claim and that Hartford simply made a recommendation that

Battelle accepted without independent evaluation.  Plaintiff further argues that

because Battelle did not exercise its discretion in making the determination, de

novo review is required.

Defendants submitted documentary evidence and multiple declarations in

support of their version of the events.  Defendants' evidence shows that Battelle's

long-term disability plan granted the administrator discretion to determine

eligibility for benefits and to construe the terms of the plan.  ECF No. 33-2, at 8.

Battelle engaged Hartford as a third party claims administrator from October 2004

to November 2008, including the time period in question in this suit.  ECF No. 35,

at 2; ECF No. 36, at 2.  The terms of Hartford's role as claims administrator were

set forth in an administrative services agreement entitled "Long Term Disability

Benefit Administration Agreement" ("ASA"), which was most recently executed

on September 26, 2005.  ECF No. 36, at 2; ECF No. 36-1.  Under the ASA,

Battelle delegated to Hartford full and final discretionary authority to make claims

determinations and handle claim appeals, among other duties.  ECF No. 34, at 2;

ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY
JUDGMENT ~ 10

1  ECF No. 36-1.  The evidence finally demonstrates that Hartford actually made the

2  final claim determination in Ms. Takata's case and did not seek input from

3  Battelle.  ECF No. 34, at 3-4; ECF No. 36, at 3-4; ECF No. 51-1, at 38-41, 71.

4       Despite Defendants' evidence, Plaintiff points to an unsigned, undated

5  administrative services agreement included in Plaintiff's claim file as evidence that

6  Battelle actually made the final determination.  ECF No. 23-3.  The unsigned

7  agreement provides for an arrangement where Hartford would make

8  recommendations to Battelle on appeal, but would not serve as fiduciary and would

9  not make final claim determinations on appeal.  ECF No. 23-3, at 5.

10       Marsha L. Macko, the Hartford Appeals Specialist who handled Ms.

11  Takata's appeal, explained in a declaration that Hartford mistakenly included the

12  unsigned administrative services agreement in Ms. Takata's claim file.  ECF No.

13  34, at 3.  Ms. Macko further explained that the unsigned document was an

14  inoperative draft version of the administrative services agreement, and that Battelle

15  ultimately engaged Hartford to provide more comprehensive services as reflected

16  in the fully executed ASA.  ECF No. 34, at 3.  Ms. Macko finally explained that

17  Harford relied on the correct, fully executed ASA in administering Ms. Takata's

18  claim and that Hartford, not Battelle, rendered the final claim determination in the

19  matter.  ECF No. 34, at 3-4.  Malesa Litteral, Vice President of Benefits and Senior

20

ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY
JUDGMENT ~ 11

1    ERISA Counsel for Battelle, similarly explained the circumstances in a declaration

2    filed with the Court.  ECF No. 36, at 3-4.

3         Plaintiff also relies on correspondence from Hartford employees stating that

4    Battelle would make the final decision on Ms. Takata's benefits claim.  An e-mail

5    from Patricia Johnson, Senior National Account Manager for Hartford's Group

6    Benefits Division, stated that Ms. Takata's appeal was not handled according to

7    Hartford's agreement with Battelle and that the final benefit determination

8    belonged with Battelle.  ECF No. 23-4, at 6.  Ms. Johnson's e-mail indicated that

9    she was relying on information provided by Donna Gatling, an Appeals Specialist

10   for Hartford.  Plaintiff also relies on a letter from Ms. Gatling to Plaintiff's counsel

11   stating that Battelle would make the final decision.  ECF No. 23-4, at 7.  Ms.

12   Gatling further sent a letter to Battelle informing Battelle that, at the time it

13   handled Ms. Takata's appeal, Hartford "had no knowledge of the Agreement or

14   that we should only make an appeals recommendation."  ECF No. 23-4, at 8.

15   Finally, an e-mail from Leah Oberley, Benefits Analyst for Battelle, to Ms.

16   Johnson at Hartford indicated that a Battelle employee agreed with the decision

17   Hartford made on Ms. Takata's claim.  ECF No. 23-4, at 9.

18        In response, Hartford produced a declaration from Ms. Literral explaining

19   that Ms. Johnson mistakenly relied on the unexecuted draft agreement when stating

20   that Battelle should have made the final determination.  ECF No. 36, at 4.  Ms.

ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY
JUDGMENT ~ 12

1    Literral explained that Ms. Johnson drew this conclusion well after Hartford had

2    rendered its final determination pursuant to the fully executed ASA.  ECF No. 36,

3    at 4. Thus the misunderstanding had no bearing on the fact that Hartford did render

4    the final claim determination.  ECF No. 36, at 4.

5         Plaintiff did not produce any evidence in rebuttal.  In fact, in the course of

6    arguing their motion to compel Plaintiff essentially conceded Defendants'

7    demonstration that Hartford made the final determination on Ms. Takata's claim.

8    ECF No. 40, at 7-8.  Plaintiff's remaining argument is that they were not properly

9    informed of the fully executed ASA or the true facts behind Hartford's appeals

10   process prior to bringing their litigation.  ECF No. 40, at 7-8.  While this argument

11   may be relevant to the question of whether Defendants can be held liable for

12   failing to provide the information when Plaintiff requested her claim file and

13   supporting documentation, it does not create an issue of material fact as to whether

14   Hartford was delegated discretion and authority to determine claims on appeals and

15   actually made the final determination in this case.

16        Finally, the Court notes that Plaintiff was given an opportunity to conduct

17   discovery on the matter of whether Battelle or Hartford actually rendered the final

18   claims decision.  ECF No. 61.  Despite this opportunity, Plaintiff was unable to

19   produce any further evidence showing that Battelle actually made the final

20   determination.

ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY
JUDGMENT ~ 13

The Court finds that the unsigned, inoperative draft administrative circumstances agreement does not create an issue of fact of fact as to whether Hartford or Battelle actually made the final determination on Ms. Takata's appeal. No reasonable finder of fact could credit such a document in the face of the fully executed administrative services agreement showing that Battelle delegated to Hartford full and final discretionary authority to make claim determinations and to handle claims on appeal, the declarations setting forth Hartford's role in actually making the final determination in Ms. Takata's case, and the declarations explaining that the unsigned, inoperable administrative services agreement was accidentally placed in Ms. Takata's claim file. Therefore the Court will apply an abuse of discretion standard in reviewing Hartford's decision on Ms. Takata's claim for benefits.[2]

**B. Plaintiff's Claim**

Defendants contend that Hartford did not abuse its discretion in denying Plaintiff's claim. Plaintiff disagrees on the merits, and further argues that

---

[2]  Plaintiff additionally alleged in her complaint that Battelle operated under a structural conflict because it both funded the Plan and administered the claims. ECF No. 1, at 19-20. However, Plaintiff appears to have abandoned this argument at the summary judgment stage. The argument would fail in any event, because Defendants have shown that Hartford was the claims administrator and rendered the final determination in Plaintiff's case.

ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT ~ 14

Defendants violated ERISA regulations by failing to fully inform her of the information necessary to perfect her claim on appeal and that Hartford acted improperly by requiring her to submit objective evidence supporting her claimed limitations and restrictions.  These issues are addressed in turn.

1.  *The Merits*

In the absence of a conflict of interest, the abuse of discretion standard operates such that the plan administrator's decision can be upheld if it is "grounded on *any* reasonable basis."  *Montour*, 588 F.3d at 629-30 (quoting *Sznewajs v. U.S. Bancorp Amended & Restated Supplemental Benefits Plan*, 572 F.3d 727, 732 (9th Cir. 2009)).   An administrator's finding of fact is clearly erroneous when, "although there is evidence to support it, the reviewing [body] on the entire evidence is left with the definite and firm conviction that a mistake has been committed."  *Boyd v. Bert Bell/Pete Rozelle NFL Players Ret. Plan*, 410 F.3d 1173, 1178 (9th Cir. 2005) (quoting *Concrete Pipe & Prods., Inc. v. Constr. Laborers Pension Trust*, 508 U.S. 602, 622 (1993)).  In applying this test, the court must consider "whether application of a correct legal standard was (1) illogical, (2) implausible, or (3) without support in inferences that may be drawn from the facts in the record."  *Salomaa v. Honda Long Term Disability Plan*, 642 F.3d 666, 676 (9th Cir. 2011) (internal quotation omitted).

1    Defendants assert numerous bases for Hartford's decision to deny Ms.

2    Takata's claim for long-term disability benefits.  First, Defendants point to the

3    results of the surveillance Hartford conducted in January and February of 2007.

4    Reports of the surveillance showed Ms. Takata engaged in various activities that

5    contradicted her claimed restrictions and limitations.  For example, Ms. Takata was

6    shown instructing back-to-back Tae Kwon Do classes on consecutive days, during

7    which she executed repeated high kicks, held boards while students attempted to

8    break them with high kicks, and assisted students with stretching and strengthening

9    exercises.  ECF No. 51, at 245-53.  When Ms. Takata was not teaching Tae Kwon

10   Do, surveillance demonstrated that she performed administrative work in the studio

11   office, attended church, and ran errands.  ECF No. 51, at 245-53, 255-59.  Ms.

12   Takata was further observed standing, bending, squatting, kneeling, and driving,

13   and lifting, carrying, and pushing multiple items of varying weight, apparently

14   without any obvious difficulty or restriction.  ECF No. 51, at 245-53.  Defendants

15   point out that Ms. Takata told Hartford that the time of year that this surveillance

16   took place was a time when her condition was at its worst.  ECF No. 51, at 363.

17       Second, Defendants point to the surveillance company's interview with Ms.

18   Takata on April 10, 2007.  Ms. Takata asserted that she was only functional for a

19   few hours per day, that she did not instruct Tae Kwon Do, and that she could not

20   perform any type of work due to her exhaustion, lack of focus, and mental

ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY
JUDGMENT ~ 16

fogginess.  EFC No. 51, at 237-38.  Although Ms. Takata denied instructing Tae Kwon Do, she did say that on rare occasion she might show her classes a "low" kick position.  ECF No. 51, at 238.  Defendants contend that Ms. Takata's answers in the interview contravene Hartford's surveillance of her activities.[3]

Third, Defendants point to an independent medical examination conducted by Dr. Wing Chau on January 2, 2004.  Dr. Chau stated that Ms. Takata's examination was "fairly unremarkable objectively"; that there wasn't much in her records "that would indicate that she is disabled from a rehabilitation standpoint"; that video surveillance of Ms. Takata had her "doing quite well with no signs of illness"; that Ms. Takata was noted as being at the office as early as 2:30 p.m. and did not leave the office until about 8:30 p.m. on teaching days; and that although Ms. Takata reported sleeping most of the day three or four days out of the week, she was "certainly well toned and without deconditioning signs".  ECF No. 51, at

---

[3]  The Court is aware that Plaintiff takes issue with the significance Hartford attaches to Ms. Takata's activities during the surveillance.  For example, Plaintiff contends that there were many hours during surveillance when she was not active, and that her activities instructing the Tae Kwon Do classes were consistent with her doctors' recommendations that she engage in regular exercise, ECF No. 51, at 89.  However, given that the activity reported in the surveillance logs is at such odds with Plaintiff's claimed restrictions and limitations, the Court finds that these claimed distinctions are not significant.

ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT ~ 17

1   378.  Dr. Chau further opined that Ms. Takata was capable of returning to at least

2   light duty work at a desk for at least four hours per day.  ECF No. 51, at 378.

3          Fourth, Defendants point to lab studies conducted by Dr. Kemunto Kakumba

4   in May 2007.  The studies indicated normal metabolic, lipid and thyroid panels.

5   ECF No. 51, at 159-66.  Dr. Kakumba additionally stated that Ms. Takata's

6   cognition was good.  ECF No. 51, at 47.

7          Fifth, Defendants point to a functional assessment conducted by Marylou

8   Watson, a registered nurse, in July 2007.  Based on Hartford's video surveillance

9   of Ms. Takata's activities and the contravening answers Ms. Takata gave in her

10  interview with the surveillance company, Nurse Watson concluded that Ms. Takata

11  was capable of full-time work in a sedentary or light duty capacity.  ECF No. 51, at

12  151-52.  Nurse Watson opined that Ms. Takata could engage in frequent walking

13  and standing, that she could employ full use of her upper extremities, and that she

14  could lift or carry up to twenty pounds occasionally and ten pounds frequently.

15  ECF No. 51, at 152.

16         Sixth, Defendants point to the opinion Ms. Takata's treating physician, Dr.

17  Kakumba, submitted before the initial claims denial and Ms. Takata's subsequent

18  appeal.  Nurse Watson had provided the findings of her functional assessment to

19  Dr. Kakumba and explained that Hartford was evaluating Ms. Takata's physical

20  abilities.  ECF No. 51, at 146.  Dr. Kakumba was asked to indicate whether she

ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY
JUDGMENT ~ 18

1    agreed or disagreed with Nurse Watson's findings.  Dr. Kakumba indicated her

2    agreement with Nurse Watson's findings.  ECF No. 51, at 146.  Dr. Kakumba

3    further noted that she "would recommend capability of employment that allowed,

4    at least initially, for frequent breaks," but otherwise agreed with Nurse Watson's

5    findings.  ECF No. 51, at 146.

6          Seventh, Defendants point to Ms. Takata's treatment by Dr. Dale Heaston,

7    an optometrist.  Ms. Takata had claimed trouble with her vision.  ECF No. 51, at

8    483.  Dr. Heaston determined that Ms. Takata suffered from no significant

9    problems with her vision and was not restricted in any way by virtue of her vision.

10   ECF No. 51, at 100-01, 144, 230-32.

11         Eighth, Defendants point to a functional assessment conducted by Lisa

12   Hufford, a vocational rehabilitation specialist.  Ms. Hufford followed Nurse

13   Watson's conclusion that Ms. Takata could perform full-time work in a sedentary

14   or light duty capacity.  ECF No. 51, at 104.  Based on the restrictions and

15   limitations prescribed by Nurse Watson and Ms. Takata's qualifications and work

16   history, Ms. Hufford identified eight alternative occupations that Ms. Takata could

17   be gainfully employed in within her geographic area.  ECF No. 51, at 104-142.

18         Finally, Defendants point to a peer review report conducted by Dr. Mark R.

19   Burns, Board Certified in Internal Medicine, dated March 11, 2008.  ECF No. 51,

20   at 47-50.  Dr. Burns conducted his review after Ms. Takata appealed her claim

ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY
JUDGMENT ~ 19

denial.  Dr. Burns reviewed Ms. Takata's medical records and concluded that Ms.

Takata was capable of full-time employment in a light-level capacity.  ECF No. 51,

at 49.  Dr. Burns noted a lack of "quantifiable" evidence supporting Ms. Takata's

claimed limitations and restrictions.  Dr. Burns further noted that Ms. Takata's

objective test results were normal, that there was no indication that she suffered

from joint, nerve, or muscle damage, and that the video surveillance conducted on

Ms. Takata showed a high degree of physical functioning.  ECF No. 51, at 49.

For her part, Plaintiff claims that Hartford abused its discretion in denying

her claim.  Plaintiff principally relies upon functional assessments Dr. Kakumba

submitted after the initial claims denial dated August 20, 2007, as well as the

Social Security Administration's award of disability benefits.  Ms. Takata began

receiving Social Security benefits around the time she claimed a disability under

the Plan in June of 1991.  ECF No. 51, at 366.  Ms. Takata was notified in January

of 2003 that the Social Security Administration had reviewed the evidence of her

disability claim and found that her disability was continuing.  ECF No. 51, at 446-

48.

After Hartford notified Plaintiff of the termination of her benefits Plaintiff

filed an appeal and submitted an opinion from her treating physician, Dr.

Kakumba.  Dr. Kakumba previously had stated that she agreed with Hartford's

initial assessment that Ms. Takata was capable of performing full-time, sedentary

1    to light-duty work.  ECF No. 51, at 146.  However, in the course of Ms. Takata's

2    appeal and as a result of Ms. Takata's responses on chronic fatigue syndrome and

3    fibromyalgia residual functioning questionnaires, Dr. Kakumba identified Ms.

4    Takata's functional limitations as an inability to sit for longer than ten to sixty

5    minutes, an inability to stand for longer than one hour, and an inability to sit, stand,

6    and walk more than two hours in an eight hour day.  Dr. Kakumba further noted

7    Ms. Takata's  limited ability to stoop and crouch and significant restrictions on

8    repetitive lifting.  ECF No. 51, at 76-86

9         Dr. Kakumba opined that Ms. Takata would need to take unscheduled breaks

10   every one to two hours during an eight-hour workday, and that these breaks could

11   range from several minutes to four hours in length.  ECF No. 51, at 79.  Dr.

12   Kakumba further opined that Ms. Takata could not sustain continuous work for

13   more than two consecutive days.  ECF No. 51, at 80.  Dr. Kakumba explained the

14   discrepancies in her opinions by stating that she better understood Ms. Takata's

15   limitations after she got to know her more.  ECF No. 51, at 47.

16        In its decision denying Ms. Takata's claims appeal, Hartford explained that

17   it considered Ms. Takata's self-reported symptoms as well as any objective

18   evidence confirming those symptoms.  ECF No. 51, at 33.  Hartford further

19   explained that Dr. Kakumba's findings were based entirely on Ms. Takata's

20   subjective report of her symptoms and were not verified by objective evidence.

ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY
JUDGMENT ~ 21

ECF No. 51, at 33-34.  Hartford based this determination on the opinion of Dr. Burns, who reviewed Dr. Kakumba's findings and determined that they were unsupported by objective evidence.  ECF No. 51, at 33-34.  In Dr. Burns' view, the available objective evidence instead indicated that Ms. Takata was capable of working full-time in a light-level capacity.  ECF No. 51, at 49.

Plaintiff additionally points to the Social Security Administration's determination that she was disabled and that her disability was continuing.  ECF No. 51, at 446-48.  Plaintiff contends that Hartford should have given this fact greater weight.

In *Salomaa v. Honda Long Term Disability Plan*, 642 F.3d 666 (9th Cir. 2011), the Ninth Circuit recognized that Social Security disability awards "do not bind plan administrators, but  . . . are evidence of disability."  *Id.* at 679.  The court reversed a denial of benefits in *Salomaa* in part because the administrator did not even mention the claimant's Social Security award in its denial letters.  *See id.*  The court explained that "[w]eighty evidence may ultimately be unpersuasive, but it cannot be ignored."  *Id.*; *see also Montour*, 588 F.3d at 635 ("While ERISA plan administrators are not bound by the SSA's determination, complete disregard for a contrary conclusion without so much as an explanation raises questions about whether an adverse benefits determination was 'the product of a principled and deliberative process.'" (internal quotations and citations omitted)).

ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT ~ 22

In this case, Hartford acknowledged the Social Security Administration's determination in its claims denial letter and stated that it took the SSA's determination into account when reviewing Ms. Takata's claim. ECF No. 51, at 34. Hartford explained that the SSA has different guidelines for determining disability and that Hartford was not bound by its determination. ECF No. 51, at 34.[4]

Plaintiff additionally states that Hartford did not give proper weight to the cyclical nature of her disease. Ms. Takata reported that her illness was cyclical with ups and downs in the manifestation of her symptoms. ECF No. 51, at 236. Dr. Chau noted in his 2004 IME report that fibrmyalgia/chronic fatigue syndrome waxes and wanes and opined that Ms. Takata probably would need medical care during episodic exacerbation of her symptoms. ECF No. 51, at 378. For its part, Hartford notes that Ms. Takata had reported her symptoms as being at their worst during the time of year when they conducted the video surveillance. ECF No. 51, at 363.[5] Based on the entire record, and taking into account Ms. Takata's

---

[4]  In addition, the Court notes that this case is not governed by the heightened abuse of discretion standard applied in *Salomaa* and *Montour*. *See Salomaa*, 642 F.3d at 676; *Montour*, 588 F.3d at 629-30. Those cases involved a conflict of interest by the claims administrator that is not present here.

[5]  The Court further takes note of the medical report of Dr. Gorman, as submitted by Plaintiff on appeal of Hartford's initial denial of her claim. ECF No. 51, at 32.

ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT ~ 23

1    objections, the Court concludes that Hartford's denial of Ms. Takata's long-term

2    disability claim was grounded in a reasonable basis.  Given the opinions of Dr.

3    Chau, Dr. Burns, and the initial opinion of Ms. Takata's own treating physician,

4    Dr. Kakumba, along with the video surveillance and the functional assessments

5    conducted by Nurse Watson and Ms. Hufford, the Court does not find that

6    Hartford's determination was illogical, implausible, or without support in the

7    record.  Hartford did not abuse its discretion in determining that Ms. Takata was no

8    longer eligible under the long-term disability plan.

9        2.  *Requirement that Plaintiff Provide Objective Evidence of her Limitations and Restrictions*

10

11   Plaintiff asserts that Hartford wrongfully required her to produce objective

12   evidence supporting her diagnoses of fibromyalgia and chronic fatigue syndrome

13   because such illnesses are not amenable to objective proof.  In support of her

_____

Plaintiff saw Dr. Gorman for the purposes of diagnosing fibromyalgia.  ECF No.
51, at 87.  Plaintiff does not appear to rely on Dr. Gorman's report as supporting
her claim at this phase in the litigation.  For their part, Defendants assert that Dr.
Gorman's report actually provides another basis for denying Plaintiff's claim
because the report contained no discussion of limitations or impairments relating to
Ms. Takata's ability to work and did not definitively diagnose Ms. Takata with
fibromyalgia.  ECF No. 51, at 87-89.  Instead, Dr. Gorman recommended that Ms.
Takata undergo a sleep study and blood tests to rule out other causes of her
symptoms.  ECF No. 51, at 88.  Defendants point out that there is no evidence that
Ms. Takata actually followed up on any of Dr. Gorman's recommendations.

ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY
JUDGMENT ~ 24

argument, Plaintiff points to *Salomaa v. Honda Long Term Disability Plan*, 642 F.3d 666 (9th Cir. 2011).  In that case, the Ninth Circuit found that an administrator's decision denying a claim for long-term disability benefits was not reasonable, in part because the administrator demanded objective evidence supporting the claimant's diagnosis of chronic fatigue syndrome.  *Id.* at 676-80.

In response, Defendants contends that even though Ms. Takata's diagnoses of fibromyalgia and chronic fatigue syndrome cannot be verified by objective evidence, the physical limitations that those conditions create are amenable to objective analysis.  Defendants cite *Boardman v. Prudential Ins. Co.*, 337 F.3d 9 (1st Cir. 2003), and *Pralutsky v. Metropolitan Life Ins. Co.*, 435 F.3d 833 (8th Cir. 2006), in support of their argument.

In *Boardman*, the court upheld a claims administrator's determination that while the claimant may have suffered from fibromyalgia and chronic fatigue syndrome, she had not shown any objective evidence of limitations or restrictions on her ability to work.  337 F.3d at 16-17.  The court noted that the claims administrator did not require the claimant to present objective medical evidence establishing her illnesses, but rather that it found there was no objective evidence that her illnesses rendered her unable to work.  *Id.* at 16 n.5.  Similarly, in *Pralutsky* the court upheld the denial of a claim for benefits when the claims administrator requested objective evidence substantiating the extent of the

ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT ~ 25

1    claimant's disability, rather than objective evidence proving that the claimant

2    suffered from fibromyalgia at all.  *See* 435 F.3d at 839-41.

3          In this case Hartford did not deny Ms. Takata's claimed diagnoses based on

4    the lack of objective evidence.  In fact, Hartford specifically stated in its denial

5    letter that it recognized the presence of Ms. Takata's medical conditions.  ECF No.

6    51, at 33.  However, Hartford explained that the mere presence of a condition does

7    not determine disability in and of itself.  ECF No. 51, at 33.  Hartford found that

8    Ms. Takata had not shown objective evidence that her diagnosed conditions limited

9    her ability to work in any occupation for which she was qualified.  ECF No. 51, at

10   33-34; 48-49.  Thus, Hartford did not base its decision on the lack of objective

11   evidence supporting the claimed diagnoses of fibromyalgia and chronic fatigue

12   syndrome, as prohibited by *Salomaa*, but rather on the lack of objective evidence

13   supporting the claimed extent of impairment, as approved of in *Boardman*, 337

14   F.3d 9, and *Pralutsky*, 435 F.3d 833.[6]

15

16   _____

[6]  In addition, the Court notes that the administrator was operating under a

17   structural conflict of interest in *Salomaa*, and therefore the court applied the abuse

18   of discretion standard with a greater degree of skepticism.  642 F.3d at 674-75.

19   Because Hartford did not operate under a conflict in this case, Hartford's decision

20   is subject to a less stringent form of abuse of discretion review.  *See Montour*, 588

     F.3d at 629-30.

ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY
JUDGMENT ~ 26

1    Hartford did not abuse its discretion by relying on a lack of objective

2  evidence supporting Plaintiff's claim.  To find otherwise would imply that a claims

3  administrator must always accept as completely accurate a diagnosis of

4  fibromyalgia and/or chronic fatigue syndrome *and* the claimant's subjective report

5  of the limitations and restrictions placed on his or her ability to work as a result of

6  those conditions.  The Court rejects such a rationale.

7    *3.  Notice of Information Necessary to Perfect Claim on Appeal*

8    ERISA provides that an administrator denying a claim for benefits must set

9  forth the specific reasons for the denial in a manner calculated to be understood by

10  the participant, and must provide a reasonable opportunity for "full and fair

11  review" of the claim denial.  29 U.S.C. § 1133.   The regulations promulgated

12  under 29 U.S.C. § 1133 state that a denial notification must (1) set forth the

13  specific reasons for the adverse determination; 2) reference the specific plan

14  provisions on which the determination is based; 3) describe any additional

15  materials necessary to perfect the claim and an explanation of why such materials

16  are necessary; and 4) provide the plan's review procedures and the time limits

17  applicable to such procedures.  29 C.F.R. § 2560.503-1(g).  The Ninth Circuit has

18  interpreted these regulations as calling for a "meaningful dialogue" between

19  ERISA administrators and their beneficiaries under the plan.  *Saffon*, 522 F.3d at

20

870 (discussing *Booton v. Lockheed Med. Benefit Plan*, 110 F.3d 1461, 1463 (9th Cir. 1997)).

Plaintiff claims that Defendants violated 29 C.F.R. § 2560.503(1)(g)(iii) by not informing Ms. Takata of the information necessary to perfect her claim. Plaintiff asserts that Hartford ultimately denied Ms. Takata's claim on appeal because she did not submit objective evidence in support of her claim, without first informing her that objective evidence was necessary to perfect the initial denial.

Hartford initially denied Plaintiff's claim by letter dated August 20, 2007. ECF No. 51, at 98-102. Pertinent to this discussion, Hartford's initial denial noted Ms. Takata's subjective report of her symptoms and limitations, but stressed that the observable evidence, including the available medical reports and the video surveillance, belied her claim that she could not engage in any occupation for which she was qualified. ECF No. 51, at 99-102. The letter also referenced the opinion of her treating physician, Dr. Kakumba, who at that time agreed with Hartford's assessment that Ms. Takata was capable of full-time work in a sedentary to light-type capacity. ECF No. 51, at 100-01. The letter stated that Dr. Kakumba was advised that if she did not agree with Hartford's assessment of Ms. Takata's limitations, then "she should provide restrictions and/or limitations with medical rationale as to why such restrictions and/or limitations were supported." ECF No. 51, at 101. The letter finally advised that if Ms. Takata chose to appeal the initial

ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT ~ 28

denial, she could submit any additional documents, records or other information in support of her claim.  ECF No. 51, at 102.

Ms. Takata did appeal the denial and submitted, among other documents, chronic fatigue syndrome and fibromyalgia residual functioning questionnaires completed by Dr. Kakumba.  ECF No. 51, a 76-86.  The questionnaires indicated numerous functional limitations on the part of Ms. Takata, and Dr. Kakumba ultimately concluded from those limitations that Ms. Takata could not sustain continuous work for more than two consecutive days.  ECF No. 51, at 80.

After receipt of the new information submitted by Dr. Kakumba, Hartford referred the information and Ms. Takata's claim file to Dr. Burns for an independent medical examination.  ECF No. 51, at 33.  Dr. Burns noted Ms. Takata's diagnoses of fibromyalgia and chronic fatigue syndrome, as well as her subjective reports of her symptoms and limitations.  ECF No. 51, at 48.  However, Dr. Burns stated that Ms. Takata's subjective reports of fatigue could not be "quantified" and that the objective evidence of her capabilities, including the video surveillance, indicated a high degree of physical functioning inconsistent with Ms. Takata's subjective report of her limitations.  ECF No. 51, at 49.

Harford denied Ms. Takata's appeal by letter dated April 25, 2008.  In the appeal denial letter, Hartford relied on Dr. Burns' report as well as the rest of the claim file in determining that the objective evidence showing that Ms. Takata was

ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT ~ 29

1    capable of working full-time in a sedentary or light-duty position far outweighed

2    the subjective reports of her symptoms and limitations.  ECF No. 51, at 32-34.

3    Hartford acknowledged Dr. Kakumba's opinion that Ms. Takata would be unable

4    to work more than two consecutive days in a row, but determined that Dr.

5    Kakumba's opinion was not supported by objective medical evidence.  ECF No.

6    51, at 34.  Plaintiff contends that this was improper, because Hartford had notified

7    her that any additional evidence she submitted on appeal must be based on

8    objective evidence.

9        The Court finds Plaintiff's argument unpersuasive.  The initial denial letter

10   generally stated that Ms. Takata's subjective reports of her limitations were not

11   enough to overcome the objective evidence indicating that she did not qualify as

12   disabled under the plan.  In addition, the letter specifically stated that if Dr.

13   Kakumba had disagreed with Hartford's assessment, then Dr. Kakumba needed to

14   provide "medical rationale" supporting restrictions and/or limitations that

15   prohibited Ms. Takata from working full-time.  Thus Ms. Takata was on notice that

16   subjective reports of her limitations and restrictions were not sufficient to

17   overcome the objective evidence, and that if any additional information was

18   submitted it likely would need to provide some objective rationale for her claimed

19   limitations and restrictions.  The Court further notes that Hartford could not

20   specifically address Dr. Kakumba's opinion in its initial denial letter.  Dr.

Kakumba's opinion at the time of the initial denial of Ms. Takata's claim was that Ms. Takata *could* work in a full-time capacity. This is not a case where the claims administrator failed to explain how some piece of evidence the claimant filed before her appeal was deficient. Hartford could not be expected to anticipate that Dr. Kakumba would change the substance of her opinion on appeal.

The Court further notes that Hartford's denial letter complied with all other requirements in 29 U.S.C. § 1133 and 29 C.F.R. § 2560.503-1(g). On the whole, the Court finds that Hartford provided Ms. Takata with a "full and fair review" of her claim on administrative appeal.

The final issue with Plaintiff's argument is that she even if she could establish a violation of 29 C.F.R. § 2560.503-1(g), she may not have an available remedy. Plaintiff has not represented that she possesses objective evidence of her restrictions and limitations that she could have submitted had she known that Hartford would require it. If Ms. Takata had argued that such evidence existed, and she stated a violation of the ERISA regulations, then the Court may have allowed her to present that evidence at this phase in the litigation. *See Saffon*, 522 F.3d at 872-73. To the extent that Plaintiff requests the Court to weigh any alleged violation of 29 C.F.R. § 2560.503-1(g) in reviewing Hartford's denial of her claim, the Court continues to find that Hartford did not abuse its discretion.

ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT ~ 31

**C. ERISA Penalties**

Plaintiff asserts that she is entitled to ERISA penalties under 29 U.S.C. § 1132(c) and 29 C.F.R. § 2575.503-1(h)(2)(iii) for Defendants' alleged failure to produce a complete copy of Plaintiff's claim file upon her request.

On September 27, 2008, Plaintiff's counsel sent a letter to Hartford requesting production of a complete copy of Ms. Takata's claim file and supporting documentation. ECF No. 51, at 26- 28. Hartford provided the claim file on October 7, 2008. ECF No. 2, at 1. Plaintiff alleged in her complaint that Hartford's response was deficient in several ways, including by not providing materials developed by a previous claims administrator. ECF No. 1, at 21-22. In the course of this litigation, Plaintiff additionally asserted that Defendants are liable for not producing the actual, operative administrative services agreement between Battelle and Hartford and other documents Defendants relied upon in contending that Hartford, and not Battelle, was the entity who made the final determination on Ms. Takata's claim. ECF No. 40, at 7-8.

ERISA provides claimants with a cause of action for penalties against an administrator who does not comply with a request for information. 29 U.S.C. § 1132(c)(1). The Ninth Circuit has explained that this section only allows for a remedy against a plan administrator and not a third-party claims administrator. *Sgro v. Danone Waters of N. Am.*, 532 F.3d 940, 945 (9th Cir. 2008) (citing *Moran*

ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT ~ 32

*v. Aetna Life Ins. Co.*, 872 F.2d 296, 299-300 (9th Cir. 1989)).  As the Defendants point out, Plaintiff directed her request for information to Harford, the claims administrator, and not Battelle, the plan administrator.  ECF No. 51, at 26- 28. Therefore Plaintiff's claim for ERISA penalties must fail.

### *Conclusion*

Hartford did not abuse its discretion by terminating Ms. Takata's claim for benefits under Battelle's long-term disability plan.  Nor is Plaintiff entitled to ERISA penalties for any alleged failure to provide information pursuant to Plaintiff's request.  Defendants' motion for summary judgment, **ECF No. 46**, is therefore **GRANTED**.

The District Court Executive is hereby directed to enter this Order, enter Judgment for Defendants, provide copies to counsel, and to **close the file**.

**DATED** this 16th day of October 2012.


_____*s/ Rosanna Malouf Peterson*_____
ROSANNA MALOUF PETERSON
Chief United States District Court Judge

ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT ~ 33